IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WALTER BABB,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent*.

Criminal Action No. ELH-04-0190

**MEMORANDUM OPINION**

This Memorandum Opinion resolves the "Motion to Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) Or, In The Alternative, For Imposition Of A Reduced Sentence Pursuant To Section 404 Of The First Step Act," filed by counsel on behalf of defendant Walter Babb.  ECF 248 (the "Motion").[1]  The Motion is supported by more than 50 exhibits.

Babb has been incarcerated since April 2004. He is serving a sentence of life imprisonment plus 60 months for drug trafficking and related offenses, imposed in August 2007 by Judge Andre M. Davis.[2]  Babb seeks a sentence reduction to 25 years in one of two ways: based on compassionate release, under 18 U.S.C. § 3582(c)(1)(A)(i), due to "extraordinary and compelling reasons" or, alternatively, under § 404 of the First Step Act, Pub. L. 115-391, 132 Stat. 5239 (2018).  *See* ECF 248 at 5.

The government opposes the Motion. ECF 254. Defendant has replied.  ECF 259. In addition, Babb has filed multiple notices of supplemental authority (ECF 260; ECF 262; ECF 266; ECF 268; ECF 269; ECF 273) and a supplement to his Motion (ECF 261), to which the

---

[1] The defendant is identified as "Babbs" throughout the docket.

[2] Judge Davis was elevated to the Fourth Circuit, and the case was reassigned to me on July 16, 2011. *See* Docket.

government responded (ECF 263) and defendant replied (ECF 267).  In response to a request from the Court (ECF 270), both parties also provided the Court with their respective positions as to the proposed Guidelines calculations that would apply to Babb if he were sentenced today. *See* ECF 272; ECF 274.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall construe the Motion under both § 3582(c)(1)(A)(i) and § 404. And, I shall grant the Motion in part and shall reduce defendant's sentence to 30 years of imprisonment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

Babb and two codefendants were charged with various drug and firearms offenses in an Indictment issued on April 7, 2004. ECF 1. Superseding indictments were returned on August 11, 2004; September 1, 2004; and April 6, 2006. *See* ECF 10, 24, 106. The Third Superseding Indictment charged Babb and his codefendant, James Moore, with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846 (Count One); conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Two); two counts of discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Three and Four); two counts of use of a firearm to commit murder in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(j) (Counts Five and Six); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Seven).

The facts of this case were recited in this Court's Memorandum Opinion of April 10,

---

[3] Many of the filings in the case predate electronic access.  The first electronic filing is at ECF 131 on April 16, 2007.  Another electronic filing appears at ECF 143 on July 5, 2007.  For the most part, however, electronic filings do not begin until September 19, 2008, with ECF 175.

2012, with regard to motions under 28 U.S.C. § 2255 filed by Babb and Moore. *See* ECF 197.[4] The facts here constitute only a brief summary, and derive primarily from ECF 197 as well as the summary of facts contained in the Presentence Investigation Report ("PSR").  ECF 271.[5]

From at least 2002 through 2004, Babb was part of a drug trafficking organization that distributed large quantities of powder cocaine and cocaine base in Maryland.  ECF 271, ¶¶ 9-10. For a period of months from late 2002 to early 2003, for example, Babb bought and distributed a half kilogram of crack cocaine per week. *Id.* ¶ 9. During the conspiracy, Babb also traveled to El Paso, Texas to broker high-volume cocaine purchases. *Id.* ¶ 10.

In October 2003, Babb and Moore traveled to El Paso, along with two other individuals, Willie Robinson and Alexandria Withers, to pursue a drug transaction with an individual named Ray Sanchez. *Id.* In late October 2003, Babb, Moore, Robinson, and Withers left El Paso and returned to Babb's house in Greensboro, North Carolina. *Id.* ¶ 27. According to several witnesses, half the deal with was done in El Paso and the other half of the deal was to be completed in Greensboro on November 5, 2003. *Id.* ¶¶ 10, 28.  Apparently, Moore and Robinson had a monetary dispute.  ECF 182-1 at 9.

On November 6, 2003, Porsha Harper, Babb's girlfriend, agreed to drive Moore to New York. *Id.* at 10.  While in Maryland, the vehicle, a Dodge Intrepid, was stopped by Maryland State trooper Jacob Cameron for speeding. ECF 197 at 4.  At the time, Moore was driving. *Id.* Moore could not produce a driver's license. *Id.*  Trooper Cameron patted Moore down after noticing a bulge in one of his pockets, and he discovered approximately $1,000 in Moore's pocket. *Id.*  The officer was suspicious because of the cash; discrepancies in statements by

---

[4] I incorporate here by reference the factual summary set forth in ECF 197.

[5] Judge Davis's Chambers file contained a copy of the PSR.  Because it did not appear to have been docketed earlier, I recently submitted it for docketing, under seal. *See* ECF 271.

Moore and Harper regarding Moore's name, their destination, and ownership of the Intrepid; and he noted that the rear end of the vehicle was unusually low. *Id.* The trooper called for backup, and two additional officers responded. *Id.*

Trooper Cameron continued to speak with Harper, who appeared shaken. *Id.* He commented on the unusually low rear end of the vehicle. Harper then asked the trooper if he wanted to look in the trunk. The officer answered in the affirmative. *Id.* Harper then opened the trunk, revealing two corpses. *Id.* The bodies were later identified as those of Robinson and Withers, both of whom had both been shot to death. *Id.* Each body was wrapped in bedding, plastic bags, and a shower curtain liner. *Id.* The items were determined to have come from Babb's residence in North Carolina. *Id.* at 4-5.

Moore's fingerprints were recovered from the bags wrapped around the bodies as well as a separate trash bag recovered from the trunk and money wrappers seized from the vehicle. ECF 271, ¶¶ 17, 18, 21. Other items in the trunk, including a black shower curtain and a floral bathmat, were also identified as coming from Babb's residence. *Id.* ¶ 18. But, his fingerprints were not recovered. ECF 197 at 5.

Harper and Moore were taken into custody at the scene. ECF 271, ¶ 12.[6] In a search of Moore incident to arrest, a substantial amount of cash was recovered. *Id.* ¶ 16. Some of the cash also appeared to be bloodstained. *Id.* Moore informed the officers that there was over $100,000 in cash inside a duffel bag in the vehicle that was to be used to pay for cocaine in New York. *Id.* ¶ 14. In a post-arrest statement, Moore explained that he was a drug dealer transporting drugs for Sanchez. *Id.*

Several other significant items were recovered from the Intrepid, including shell casings,

---

[6] On November 9, 2006, Harper pleaded guilty to the offense of obstruction of justice.

a shirt stained with Robinson's blood, a map to El Paso, a woman's boot containing $2,000, a calendar with Babb's phone number written on it, and a pen inscribed with the name of Sanchez's El Paso auto-repair business. ECF 197 at 5.

Following the arrest, Babb paid Harper's bail ($21,000 in cash) and sent at least $35,000 to Davita Bush, another acquaintance of Moore, with whom he sold drugs. ECF 271, ¶¶ 10, 23, 40, 41. In addition, on two occasions, Bush traveled to Babb's home in North Carolina to obtain quantities of crack cocaine and money from him. *Id.* ¶ 42. Babb also changed his cell phone number, moved out of his house, and disposed of some of his furniture *Id.* ¶ 32. Robinson's DNA was later recovered from the cushion of one of the discarded couches. *Id.*

Babb was arrested in Greensboro on August 2004. *Id.* ¶ 47. After his arrest, officers executed a search warrant at his home and discovered two assault rifles, a Glock pistol, a scale, some Ecstasy pills, and an identification card for Babb. *Id.*

On September 8, 2006, a week before a motions hearing, the government filed a sentencing enhancement notice for Babb under 21 U.S.C. § 851 (the "§ 851 Notice"). ECF 117. The § 851 Notice stated that Babb had five prior felony drug offenses. *See* ECF 271, ¶¶ 123, 129, 132, 135. Notably, one of the prior convictions that qualified as a predicate offense does not appear in the PSR. But, according to the government's § 851 Notice, in 1993 Babb was convicted for possession with intent to distribute 40.9 grams of cocaine and trafficking of cocaine, for which he received a sentence of ten years' imprisonment. ECF 117, ¶ (a).

Babb and Moore proceeded to a jury trial that began on April 2, 2007. The government dismissed Counts Five and Six prior to submission of the case to the jury. ECF 197 at 7. On April 19, 2007, the jury convicted Babb of Counts One, Two, and Seven, but the jury was unable to reach a verdict as to Counts Three and Four with respect to Babb. ECF 135. As to Count One,

the jury determined that 5 kilograms or more of cocaine and 50 grams or more of crack cocaine were attributable to Babb. *Id.* Moore was convicted of Counts One, Two, Three, Four, and Seven. The government elected not to re-try Babb as to Counts Three and Four.

According to the PSR, Babb had a base offense level of 38 for Count One, the drug conspiracy count, pursuant to § 2D1.1(c)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), based on a finding that his criminal activity involved over 1.5 kilograms of crack cocaine and 20 kilograms of powder cocaine. ECF 271, ¶ 53. And, he had a base offense level of 24 for Count Two (gun conspiracy). *Id.* However, in determining Babb's Guidelines range for Counts One and Two, the PSR applied the murder cross-reference provision, pursuant to U.S.S.G. § 2D1.1(d)(1) and § 2A1.1(a), based on the murders of Withers and Robinson. *Id.* ¶ 53. In particular, U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1." Therefore, the PSR reflected a base offense level of 43. ECF 271, ¶¶ 53, 61.

Babb had a Criminal History Category of VI based on 23 criminal history points. *Id.* ¶ 138. He also qualified as a career criminal under U.S.S.G. § 4B1.1 as a result of five prior felony convictions. However, only two of the offenses constitute proper predicates for a career offender designation today. *See id.*, ¶¶ 105, 123. In any event, the career offender designation had no impact on Babb's offense level or criminal history category. *Id.* ¶ 139. With 23 criminal history points, Babb had a criminal history category of VI and the murder cross reference controlled his offense level. With an offense level of 43 and a criminal history category of VI, the Guidelines for Count One called for a sentence of life imprisonment.

As noted, Babb was also convicted of a violation of 18 U.S.C. § 924(c) (Count Seven).

Therefore, the PSR reflected a Guidelines range of life imprisonment for Counts One and Two, plus 60 months, consecutive, for the § 924(c) offense in Count Seven.  ECF 271, ¶¶ 67-69, 161.

The statutory minimum sentence for Count One ordinarily would have been ten years. But, based on the § 851 Notice, Babb faced a mandatory life sentence. *Id.* ¶ 158; 21 U.S.C. §§ 841(b)(1)(A), 851.  And, Count Seven required an additional mandatory minimum sentence of five years, consecutive, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). ECF 271, ¶ 160.

At sentencing on July 24, 2007, the defendant was 36 years of age.  The government asked the court to impose the mandatory sentence of life imprisonment plus 60 months. ECF 192-2 (Sentencing Transcript) at 2. The government stated that it did not "know who pulled the trigger in this case." *Id.* at 4.  The government speculated that "the jury or a couple of jurors, I think, probably had an issue as to Mr. Babb's role in the actual murders." *Id.* But, the government explained, *id.* at 5: "I would argue there was very clearly his involvement in a drug trafficking conspiracy in the course of which … two first degree murders occurred, and that's really all that's required for the [murder] cross reference."

Defense counsel noted a cursory objection to the application of the murder cross-reference. *See id.* at 6.

Judge Davis found that the murder cross-reference was warranted because, "at a minimum, Mr. Babb was an aider and abettor to the actual murder[s], providing support for the conspiracy." *Id.* at 7. Judge Davis also stated, *id.*: "The record will reflect that in the presentence report Mr. Babb shows a person who has been very, very active in the criminal community and as evidenced by Mr. Moore a capacity for violence that it's [sic] striking."

The Court sentenced Babb to life in prison as to Count One; 20 years' imprisonment as to Count Two, concurrent with Count One; and 60 months' imprisonment as to Count Seven,

consecutive, for a total term of life imprisonment plus 60 months. ECF 143 (Judgment).[7]

Babb's conviction and sentence were affirmed on direct appeal. ECF 178. *United States v. Babb*, 369 F. App'x 503 (4th Cir. 2010). And, his petition for certiorari to the Supreme Court was denied on October 4, 2010. *United States v. Babb*, 562 U.S. 878 (2010).

Babb subsequently filed a motion for post-conviction relief under 28 U.S.C. § 2255, raising numerous contentions. *See* ECF 187. I denied his motion. ECF 197. His ensuing appeal was dismissed by the Fourth Circuit. ECF 209; *see United States v. Babb*, 485 F. App'x 641 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1840 (2013). Babb subsequently filed a "Motion for Relief from Judgment," pursuant to Fed. R. Civ. P. 60(b). ECF 213. I denied that motion by Memorandum and Order of June 17, 2014. ECF 216; ECF 217.

Then, on May 4, 2015, Babb moved for a reduction of sentence under Amendment 782 of the Guidelines. ECF 219. I denied that motion by Order of November 25, 2015. ECF 229.

On August 6, 2019, the Court appointed the Federal Public Defender to represent Babb in proceedings pursuant to the First Step Act of 2018. ECF 240. Defendant is now 50 years of age. He is incarcerated at USP Lewisburg. He has been in custody since August 16, 2004. Because of defendant's life sentence, he has no projected release date.

On April 5, 2020, Babb petitioned the Warden of USP Lewisburg for compassionate release, citing the changes to 21 U.S.C. § 851 brought by the First Step Act of 2018 and his post-offense rehabilitation. ECF 248-7. The Warden denied defendant's request on April 23, 2020, because Babb's challenges to the validity of his sentence were outside the Warden's authority

---

[7] Moore was sentenced to life in prison as to Count One; a period of 240 months' incarceration as to Count Two, concurrent with Count One; 120 months as to Count Three, consecutive to Count One; 120 months as to Count Four, consecutive to Count Three; and 300 months as to Count Seven, consecutive to Counts One and Three, for a total term of "life plus 35 years." ECF 142.

under the First Step Act. ECF 248-8. Babb subsequently appealed the Warden's decision. ECF 248-9. Thus, Babb has exhausted his administrative remedies. The Motion followed on June 30, 2020.  ECF 248.

## II.   Statutory Framework

Babb seeks a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(a)(i) or § 404 of the First Step Act of 2018.  I turn to review these provisions.

### A.  Compassionate Release

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was first enacted as part of the Sentencing Reform Act of 1984.  Originally, it permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress enacted the First Step Act of 2018 ("2018 FSA" or "First

Step Act"), Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. Collington*, 995 F.3d 347, 352 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).   As amended by the 2018 FSA, 18 U.S.C. § 3582(c)(1)(A) now permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.   (Emphasis added).   So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.   *McCoy*, 981 F.3d at 276.   That option constitutes a sea change in the law.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the

Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, acting pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C), the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release.   It is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." *See McCoy,* 981 F.3d at 276.  Significantly, however, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, *i.e.*, *prior* to the enactment of the First Step Act.  *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive, and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."  U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "Other Reasons," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category."  *McCoy*, 981 F.3d at 276.

The BOP regulation appears at Program Statement 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)." However, a court may not rely on the Program Statement. Rather, a court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) ("When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'") (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As indicated, however, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 282; *see United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283. Moreover, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is

entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). To be sure, compassionate release is a "rare" remedy. *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)); *see United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). But, if the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See United States v. Kibble*, 992 F.3d 326, 331-32 (4th Cir. 2021) (noting that district court must consider factors under 18 U.S.C. § 3553(a) when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *Chambliss*, 948 F.3d at 693-94.

## B. The Fair Sentencing Act of 2010 and The First Step Act of 2018

### i.

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 826 (2010); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Section 3582(c)(1)(B) provides: "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – ... (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute...." And, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ." 18 U.S.C. § 3582(c)(2); *see Collington*, 995 F.3d at 353 (noting that "§ 3582(c)(2) permits defendants to move for a reduced sentence based on retroactive amendments to the Guidelines"); *United States v. Smalls*, 720 F.3d 193, 195-96 (4th Cir. 2013).[8]

As mentioned, in December 2018 Congress enacted the First Step Act. *See McCoy*, 981 F.3d at 276. Section 404 of the 2018 FSA expressly "makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010)." *Jackson*, 952 F.3d at 495; *see United States v. Lancaster*, __ F.3d __, 2021 WL 1823287, at *2 (4th Cir. May 7, 2021); *Collington*, 995 F.3d at 352; *United States v. Woodson*, 962 F.3d 812, 813 (4th Cir. 2020); *Chambers*, 956 F.3d at 669-70; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 177-180 (4th Cir. 2019); *United States v. Venable*, 943 F.3d 187, 188-89 (4th Cir. 2019). In particular, the 2018 FSA authorizes the modification of a previously imposed sentence for a defendant affected by the statutory changes to the penalty ranges for crack cocaine offenses. *See*, *e.g., Jackson*, 952 F.3d at 495.

The Fair Sentencing Act of 2010 ("2010 FSA"), which took effect on August 3, 2010, "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *see Dorsey v. United States*, 567 U.S. 260, 264 (2012); *Collington*, 995 F.3d

---

[8] "[A] sentence modification is not a plenary resentencing proceeding." *Martin*, 916 F.3d at 396 (internal quotation marks omitted).

at 351 (noting that "the Fair Sentencing Act reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes"); *Wirsing*, 943 F.3d at 177–78. Of relevance here, Congress increased the threshold quantities needed to trigger mandatory sentencing ranges associated with crack cocaine offenses. *See Dorsey*, 567 U.S. at 269; *Woodson*, 962 F.3d at 812; *Gravatt*, 953 F.3d at 260.  In particular, the crack-to-powder cocaine disparity was reduced from 100-to-1 to 18-to-1. *Dorsey*, 567 U.S. at 269; *Gravatt*, 953 F.3d at 260; *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013), *cert. denied*, 572 U.S. 1071 (2014).

Under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than 28 grams of cocaine base carries a maximum of 20 years imprisonment; the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of cocaine base is five years to 40 years of imprisonment; and the sentencing range for possession with intent to distribute more than 280 grams of cocaine base is ten years to life imprisonment. Section 3 of the 2010 FSA, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.

Thereafter, the Sentencing Commission amended the Guidelines to conform to the statute. *Gravatt*, 953 F.3d at 260. However, the 2010 FSA did "not apply its changes retroactively," so as to "alter statutory minimum terms of imprisonment" that were previously in effect. *Id.*  With the enactment in 2018 of the First Step Act, Congress rectified the inequity. *Id.*

Section 404(b) of the 2018 FSA "renders these reforms retroactive by authorizing a district court 'that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" *Woodson*, 962 F.3d at 813; *see Lancaster*, 2021 WL 1823287, at *2. In other

words, under § 404 of the Act, the provisions of the 2010 FSA apply retroactively to defendants

who were sentenced prior to August 3, 2010, *i.e.*, the effective date of the 2010 FSA. *United*

*States v. Charles*, 932 F.3d 153, 162 (4th Cir. 2019).

Section 404 of the 2018 FSA provides:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense"
     means a violation of a Federal criminal statute, the statutory penalties for
     which were modified by section 2 or 3 of the Fair Sentencing Act of 2010
     (Public Law 111–220; 124 Stat. 2372), that was committed before August 3,
     2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a
     covered offense may, on motion of the defendant, the Director of the Bureau
     of Prisons, the attorney for the Government, or the court, impose a reduced
     sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law
     111–220; 124 Stat. 2372) were in effect at the time the covered offense was
     committed.

(c) Limitations.—No court shall entertain a motion made under this section to
     reduce a sentence if the sentence was previously imposed or previously
     reduced in accordance with the amendments made by sections 2 and 3 of the
     Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a
     previous motion made under this section to reduce the sentence was, after the
     date of enactment of this Act, denied after a complete review of the motion on
     the merits. Nothing in this section shall be construed to require a court to
     reduce any sentence pursuant to this section.

The procedural framework that applies to motions under Section 404 is found in 18

U.S.C. § 3582(c)(1)(B).   *See Collington*, 995 F.3d at 353 ("We have held that section 404

motions are brought under § 3582(c)(1)(B)); *Wirsing*, 943 F.3d at 183 (concluding that §

3582(c)(1)(B) is "the appropriate vehicle" for a 2018 FSA motion).   Thus, eligible defendants

may seek to reduce their sentences pursuant to 18 U.S.C. § 3582(c)(1)(B).

Notably, § 404 "permits the district court to *impose* a sentence on defendants under the

retroactively applicable Fair Sentencing Act reforms." *Collington*, 995 F.3d at 354 (emphasis in

original). The Fourth Circuit has explained that the use of the word "impose," rather than the word "modify" or "reduce," is significant; it grants district courts "greater sentencing authority to determine whether and how to reform individual sentences." *Id.* (comparing the authority given to a district judge under § 404(b) to that given under § 3582(c)). "Ultimately, the First Step Act contemplates a robust resentencing analysis…." *Id.* at 358.

Of relevance here, "when a court exercises discretion to reduce a sentence, the imposition of the reduced sentence must be procedurally and substantively reasonable." *Collington*, 995 F.3d at 358. Procedural reasonableness does not "require the district court to hold a resentencing hearing." *Id.* at 360. But, it requires "courts to consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, [and] determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those facts, and adequately explain that decision." *Id.*

The Fourth Circuit has made clear that, in the context of the First Step Act, a district judge must "accurately recalculate the Guidelines sentence range"; "*correct* original Guidelines errors and apply intervening case law made retroactive to the original sentence"; and "consider the § 3553(a) factors to determine what sentence is appropriate." *Id.* at 355 (emphasis in original). And, the sentencing factors in 18 U.S.C. § 3553(a) may be used to "*depart downward* from the new Guidelines range." *Id.* (emphasis in original). Moreover, the Fourth Circuit has made clear that a district court will abuse its discretion "when it 'impose[s] a reduced sentence' that exceeds the maximum established by the Fair Sentencing Act." *Id.* at 356 (quoting § 404(b)) (alterations in *Collington*).

17

In sum, "the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms." *Id.* at 355.

In *Lancaster*, 2021 WL 1823287, the Fourth Circuit further clarified how a district court should proceed when presented with a motion to reduce a sentence under § 404 of the First Step Act. First, the court must determine whether the sentence is "'eligible' for consideration 'on the merits.'" *Id.* at *3 (quoting *Gravatt*, 953 F.3d at 262). The sentence will be eligible for consideration if it is for a "covered offense"; the motion is addressed to the court that imposed the subject sentence; and the sentence has not "been 'previously imposed or previously reduced'" under the Fair Sentencing Act." *Id.* Upon "determining that a sentence qualifies for review on the merits, the court is then given discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed." *Id.* To make that determination, "the court must engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of 'intervening case law'…and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (citing *Collington*, 995 F.3d at 355; *Chambers*, 956 F.3d at 672).

**ii**.

As indicated, if the sentence qualifies for review on the merits, the court must consider "intervening case law" and the factors under 18 U.S.C. § 3553(a). *Collington*, 995 F.3d at 355; *Chambers*, 956 F.3d at 672. Of pertinence here, Section 401 of the First Step Act of 2018 modified 21 U.S.C. § 851 in two ways that are central to defendant's request for relief. In particular, titled "Reduce and Restrict Enhanced Sentence for Prior Drug Felonies," it reduced the mandatory minimum penalties and narrowed the scope of its application.

Prior to the passage of the First Step Act, a "felony drug offense," defined as an offense that is punishable by a term of imprisonment of more than one year, qualified as a § 851 predicate offense.[9]  But, under the amended version of § 851, only a "serious drug felony" or "serious violent felony" qualifies as a predicate offense. *See* 21 U.S.C. § 851 (as amended by § 401(a) of the 2018 FSA); *see also* 21 U.S.C. §§ 802(57)(A) and (58)(A) (defining "serious drug felony" and "serious violent felony," respectively).

A "serious drug felony" is defined in 21 U.S.C. § 802(57), with reference to offenses described in 18 U.S.C. § 924(e)(2) (the Armed Career Criminal Act).  Section 802(57) defines a "serious drug felony" as:

An offense prohibited by § 924(e)(2) of Title 18 for which –

(A) The offender served a term of imprisonment of more than 12 months; and

(B) The offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

Section 924(e)(2) of 18 U.S.C. defines "serious drug felony" as an offense, *inter alia*, involving manufacturing, distributing, or possessing with intent to distribute a controlled substance, with a maximum term of imprisonment of ten years or more.

In addition, the 2018 FSA reduced the mandatory minimum penalties triggered by a § 851 notice, applicable to offenders with one or more prior predicate offenses. *See* First Step Act § 401(a)(2). Specifically, the First Step Act reduced the mandatory minimum penalty from 20 years to 15 years for individuals with one prior qualifying conviction and from life to 25 years for individuals with two or more prior qualifying convictions.

---

[9] More specifically, a felony drug offense "is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. 802(44).

Section 401(c) clarified that these statutory changes apply to conduct that occurred before the First Step Act's enactment, *i.e.*, prior to December 21, 2018, "if a sentence for the offense has not been imposed as of" that date.

### III.   DISCUSSION

#### A. EXTRAORDINARY AND COMPELLING ANALYSIS

I begin with the request for modification of Babb's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

Babb argues that the gross disparity between the mandatory life sentence he received in 2007 and the term he would face today is an extraordinary and compelling reason to grant relief. ECF 248 at 5, 24; ECF 261 (citing *McCoy*, 981 F.3d 271). He contends that "Section 401 of the First Step Act fundamentally changed the mandatory minimum penalties that [he] would face in two ways." ECF 248 at 24.

According to defendant, only one of his prior offenses would qualify as a predicate offense under § 851, as opposed to the five offenses that previously qualified. *Id.* Thus, his mandatory minimum sentence on Count One would be 15 years, rather than life imprisonment. *Id.* But, even if two of defendant's offenses qualified as predicates, the "highest mandatory-minimum penalty Mr. Babb would face on Count One would be 25 years," rather than life imprisonment. *Id.* (citing 21 U.S.C. § 841(b)(1)(A)).

As noted, in 2006 the government identified five prior drug convictions that served as predicate offenses for Babb's § 851 Notice. ECF 117. Three of those convictions were for drug possession, for which Babb received short, suspended sentences. *See* ECF 271, ¶¶ 129, 132, 135. These offenses would not qualify today as predicates under § 851. Defendant's conviction in North Carolina in 1999 for possession with intent to distribute 26.3 grams of cocaine also would not qualify as a predicate, because it resulted in a sentence of nine to eleven months,

entirely suspended. *Id.* ¶¶ 123, 124. The sentence of nine to eleven months was later imposed for violation of probation. *Id.* ¶ 123. But, because the sentence was less than 12 months, it still would not qualify as a predicate under § 851 under current law.

In 1993, however, Babb was convicted of possession with intent to sell 40.9 grams of cocaine, for which he was sentenced to ten years' imprisonment. *See* ECF 117, ¶ a.[10] Accordingly, only defendant's 1993 conviction constitutes a "serious drug felony" that qualifies as a predicate offense for an § 851 enhancement under the amended version of § 851. Therefore, if defendant were sentenced today, an § 851 enhancement would require a mandatory minimum term of 15 years' imprisonment for Count One, rather than life imprisonment.

The government does not dispute that four of defendant's prior convictions would no longer meet the requirements to trigger the § 851 enhancement. In fact, the government has not offered any substantive arguments in opposition. Instead, the government argues that an alleged sentencing disparity does not constitute an "extraordinary and compelling reason" for compassionate release. ECF 263 at 3. In its view, *McCoy*, 981 F.3d 271, was wrongly decided. But, argues the government, even assuming it was decided correctly, "courts should not apply *McCoy* across the board to every case involving an alleged sentencing disparity" because it would "subvert[] the entire foundation for the well-grounded concept of the finality of sentencing." *Id.* at 4. Therefore, the government maintains that *McCoy* should be limited to the narrow circumstance of "an extraordinarily long sentence resulting from numerous 'stacked' § 924(c) convictions that could not have occurred after the First Step Act." *Id.*

*McCoy* is binding on this Court. *See* ECF 267 at 2. Moreover, the *McCoy* Court expressly held that "district courts are 'empowered ... to consider *any* extraordinary and compelling reason

---

[10] As noted, this conviction was not included in the PSR.

for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Brooker,* 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis added); *see United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"). And, the  "[t]he fact that Congress chose not to make [another section] of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *McCoy*, 981 F.3d at 286.

      Therefore, I conclude that the Court has the authority to consider the legislative change to § 851 in conducting its review of defendant's Motion.  And, a gross sentencing disparity may constitute an extraordinary and compelling reason to grant compassionate release. *See, e.g., McCoy*, 981 F.3d at 285-86 (concluding that district courts may consider as an "extraordinary and compelling reason[]" that there is a "gross disparity between" the defendant's sentence and "sentences Congress now believes to be an appropriate penalty for the defendant['s] conduct"); *United States v. Wilkerson*, 5:96-CR-167-1H, 2021 WL 1062353, at *2 (E.D.N.C. Mar. 19, 2021) ("[F]inding a huge disparity between the statutory requirements [defendant] was sentenced under and the sentence he would face if sentenced today, the court finds [defendant] has shown an extraordinary and compelling reason for compassionate release."); *United States v. Payton*, No. PJM-06-0341, 2021 WL 927631 (D. Md. Mar. 11, 2021) (finding extraordinary and compelling reasons presented by the disparity between defendant's sentence and the sentence for the more culpable defendant, which had been reduced to time served under § 404 and compassionate release); *United States v. Kratsas*, DKC-92-0208, 2021 WL 242501 (D. Md. Jan. 25, 2021) (granting compassionate release to individual who received a mandatory life sentence for a drug offense that, after passage of the First Step Act, would require only a 15-year

mandatory minimum sentence); *cf. Kibble*, 992 F.3d at 334 (Gregory, C.J., concurring) ("When a statute provides for relief in 'any case,' there is no basis for categorically limiting that relief to a certain subset of cases.").

Moreover, many courts have found that the sentencing disparity resulting from changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief. *See, e.g.*, *United States v. Nicholson*, TDC-03-0268, ECF No. 394 (D. Md. May 21, 2021) ("Although the FSA's changes relating to § 851 notices were not made retroactive, neither were the changes relating to the stacking of § 924(c) charges, yet *McCoy*…authorized a sentence reduction under § 3582(c)(1)(A) based on the gross disparity between the defendant's sentence…and the sentence that would be imposed today."); *United States v. Sappleton*, PJM-01-284-3, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (finding that the gross disparity between the mandatory life sentence defendant received in 2002 and the 15-year mandatory minimum term he would face today because of changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief); *United States v. Williams*, 5:12-cr-14, 2020 WL 5834673, at *8 (W.D.Va. Sept. 30, 2020) (finding that the "dramatic reduction under section 401 of the First Step Act to the § 841(b)(1)(A) enhancements [under § 851] constitutes an extraordinary and compelling reasoning warranting a reduction in [defendant's] sentence"); *United States v. Day*, 474 F. Supp. 3d 790, 806-7 (E.D. Va. 2020) (finding extraordinary and compelling reason because "were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence"); *see also United States v. Sweets*, CCB-04-564, 2020 WL 3073318, at *3

(D. Md. June 10, 2020) (considering the changes to § 851 in deciding to reduce a sentence); *United States v. Turner*, TDC-06-0274, ECF 50 at 3–4 (D. Md. June 28, 2019) (new provisions relating to predicate offenses for § 851 enhancements "support[ ]" the decision to impose a reduced sentence).

To be sure, if Babb were prosecuted today, his Guidelines would still call for a sentence of life imprisonment, based on the murder cross reference.  *See* ECF 272 at 1.  But, the Court would not be *compelled* to sentence him to life imprisonment. As indicated, the mandatory minimum sentence applicable to Count One would now be 15 years, not life.[11]

Indeed, Babb's sentence of life imprisonment plus 60 months appears significantly longer than other federal sentences imposed more recently for drug offenses involving murder. *See, e.g., United States v. Bryant*, 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.") (citing *United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020)); United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2018, Fourth Circuit, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf), *aff'd*, *McCoy*, 981 F.3d 271.

For example, in *United States v. Floyd*, CCB-16-597, Floyd was one of several defendants convicted after a 25-day trial. *See id.*, ECF 477; ECF 491. In particular, Floyd was convicted of a racketeering conspiracy that included murders and drug conspiracy. Floyd was not

---

[11] It is not clear that the government would necessarily file for enhancement if the defendant "were tried today." *Sappleton*, 2021 WL 598232, at *3-4 (noting that § 851 enhancements "have generally become so disfavored that in 2016 they were applied in only five cases in this district").

the shooter, however.  Although his offense level and criminal history category called for a life sentence, Judge Blake imposed a total sentence of 360 months' imprisonment. *Id.*, ECF 691.

More recently, in *United States v. Antoine*, PWG-19-140, the defendant was involved in a drug trafficking organization in Baltimore, and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy. *See id.*, ECF 349 at 9-10. Pursuant to a plea agreement, Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. *Id.*  Although Antoine was the shooter, Judge Grimm imposed a total sentence of 270 months (22.5 years). *Id.*, ECF 465.

The Court is mindful that Antoine pleaded guilty and thus accepted responsibility, unlike Babb.  Moreover, in doing so, Antoine spared the government, the court, and the public of the burdens of a trial.  Undoubtedly, he received credit for doing so.  Nevertheless, in *Floyd*, where the defendant went to trial, the defendant received a sentence of 30 years.[12]

Accordingly, I am satisfied that Babb readily satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

## B.  FIRST STEP ACT ANALYSIS

Even if the sentencing disparity did not constitute an extraordinary and compelling reason for relief under the compassionate release scheme, Babb would be eligible for a sentence reduction pursuant to § 404 of the First Step Act.

---

[12] The case of *United States v. Whisonant, et al.*, ELH-17-191, is also pertinent. There, three of the defendants pleaded guilty to conspiracy to distribute heroin and to discharging a firearm resulting in death, during and in relation to a drug trafficking crime, or to possession of a firearm in furtherance of a drug trafficking crime. One defendant received a total sentence of 360 months imprisonment, another received a sentence of 420 months, and still another received a sentence of 480 months of incarceration. *See id.*

As noted, § 404 of the 2018 FSA makes the provisions of the 2010 FSA available to a defendant who was sentenced for a "covered offense" before August 3, 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3" of the 2010 FSA, which reduced the statutory penalties for cocaine base offenses. *See Peters*, 843 F.3d at 575 (stating that the 2010 FSA "reduced the statutory penalties for cocaine base offenses").

The government posits that Babb was not convicted of a "covered offense" because "his drug trafficking offense involved well over five kilograms of powder cocaine," in addition to crack cocaine. ECF 254 at 15. And, the 2010 FSA only modified the quantity of thresholds for offenses involving cocaine base. *Id.* However, the government concedes that its position is at odds with the Fourth Circuit's decision in *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020).

In *Gravatt*, the Fourth Circuit considered whether a defendant convicted of conspiracy to possess with intent to distribute fifty grams or more of crack cocaine *and* five kilograms or more of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) and (b)(1)(A)(ii) and 21 U.S.C. § 846, qualified for a reduction in sentence under § 404 of the First Step Act. 953 F.3d at 263. The Fourth Circuit reasoned that there was nothing in the text of the First Step Act that required a defendant to be convicted of a single violation of a federal criminal statute whose penalties were modified by section 2 or 3 of the FSA 2010. *Id.* at 264; *see also Lancaster*, 2021 WL 1823287, at *3 (noting that a "covered offense" under § 404(b) includes a violation under 21 U.S.C. § 841(b)(1)(A)(iii)).

Thus, the Court concluded that the fact that the defendant's sentence also included conspiracy to possess with intent to distribute powder cocaine, which was not amended under the 2010 FSA, did not render him ineligible for a sentence reduction. Accordingly, a conspiracy

involving 50 grams or more of crack cocaine and another drug, as in this case, still qualifies as a "covered offense" under § 404 of the First Step Act, even though the penalties for the second drug were not modified by the 2010 FSA.

Babb's drug conspiracy conviction in violation of 21 U.S.C. § 841(b)(1)(A) is clearly a "covered offense" under § 404 of the 2018 FSA. *Lancaster*, 2021 WL 1823287, at *3 (concluding that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C)).  Moreover, Babb was sentenced prior to August 3, 2010; he has directed his motion for a reduction to the court that originally sentenced him; and this is his first such motion. *Lancaster*, 2021 WL 1823287, at *3. Therefore, Babb is eligible for relief. That determination does not end the inquiry, however.

"In imposing a new sentence, the Court is not limited to a mathematical recalculation based on the changed mandatory minimum sentences established by FSA 2010." *Nicholson*, TDC-03-0268, ECF No. 394 at 7-8 (citing *Collington*, 995 F.3d 347). Rather, as noted, the Court must determine whether a sentence reduction is warranted in light of intervening changes in the case law and it must consider the factors set forth in 18 U.S.C. § 3553(a). *Lancaster*, 2021 WL 1823287, at *5. And, § 404 does not limit what a court may consider in connection with a resentencing authorized by the statute. "Thus, just as there is under § 404 'no limiting language to preclude the court from applying intervening case law,'…there is no limiting language to preclude the application of *intervening legislative changes* from which Defendant can benefit." *Day*, 474 F. Supp. 3d at 800 (quoting *Chambers*, 956 F.3d at 672) (emphasis added by this Court);  *Day*, 474 F. Supp. 3d at 800 (noting that this "conclusion also squares with the general principle that 'the law in effect at the time governs sentencing'" (internal citation omitted)).

Defendant urges the Court to apply the changes to § 851 wrought by § 401 of the First Step Act in imposing a reduced sentence under § 404. *See* ECF 248 at 27; ECF 269 at 1-2. According to defendant, the Fourth Circuit's recent case law establishes that a district court must recalculate the defendant's sentence based on "changes flowing from case law and those flowing from statutes," regardless of whether it is retroactive. ECF 269 at 1-2 (citing *Lancaster*, 2021 WL 1823287, at *3).

The government's argument, in contrast, focuses on the fact that § 401, on its own, is not retroactive.  It maintains that Court should not consider the changes to § 851. ECF 254 at 9-14.

Pursuant to recent Fourth Circuit precedent, discussed below, it is clear that if the Court imposes a new sentence pursuant to § 404, then it should apply present day sentencing law, and this would include the effect of § 401 on § 851 enhancements, even though § 401 is not retroactive. *See Collington*, 995 F.3d 347; *Chambers*, 956 F.3d at 672; *see also Lancaster*, 2021 WL 1823287, at *4 (noting that the Fourth Circuit's rulings "require the application of non-retroactive Guidelines errors in First Step Act resentencings") (Wilkinson, J., concurring).

In *Lancaster*, 2021 WL 1823287, the Fourth Circuit considered what a district court is required to analyze "on the merits" of a motion for a sentence reduction when a defendant is eligible for discretionary relief under the First Step Act. There, as in this case, the defendant was sentenced for conspiracy to traffic in crack cocaine and cocaine powder, in violation of 21 U.S.C. § 846. *Id.* at *4. The defendant also qualified as a career offender under U.S.S.G. § 4B1.1 and was sentenced on that basis. The district court found that the defendant was eligible for discretionary relief under § 404 because his sentence was modified by the 2010 FSA. But, the court "did not recalculate the Guidelines sentencing range in light of 'intervening case law.'" *Id.* at *4 (quoting *Chambers*, 956 F.3d at 672). Instead, it denied the defendant's motion on the

merits, finding that it would have imposed the same sentence had the Fair Sentencing Act been in effect at the time of the original sentencing.

On appeal, the defendant argued that if the district court had recalculated his Guidelines range in light of intervening case law he would have received a reduced sentence because he no longer qualified as a career offender, in light of the Fourth Circuit's decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). The Fourth Circuit agreed, finding "that additional analysis was required" before the district court could decline to reduce defendant's sentence. *Lancaster*, 2021 WL 1823287, at *1. The *Lancaster* Court explained that "to determine whether a sentence under the Fair Sentencing Act would be the same as the sentence previously imposed…the court would at least have to" recalculate the defendant's Guidelines range on the basis of the changes to the career offender enhancement and consider the § 3553(a) factors to "determine whether its balancing of the factors was still appropriate in light of intervening circumstances." *Lancaster*, 2021 WL 1823287, at *4.

The government argues that the "*Lancaster* case is wholly inapposite here because it did not hold that Section 401 can be applied retroactively in a First Step Act reduction." ECF 274 at 4. Thus, the government urges the Court to confine the *Lancaster* opinion to the facts of that case. But, in making this argument, the government ignores the remedial purpose of the First Step Act and the Fourth Circuit's general guidance in how to apply it. *See, e.g., Collington*, 995 F.3d at 350-51.

Notably, three judges in this District have concluded that in considering a sentence reduction under § 404, the court should not apply the enhanced mandatory minimum penalties pursuant to § 851 notices that were based on prior convictions that no longer qualify as predicate convictions under the 2018 FSA. *See Nicholson*, TDC-03-0268, ECF 394 at *8-9 (concluding

that "the mandatory life sentence[] pursuant to the § 851 enhancement would not apply under present law and thus should not be applied when the Court imposes a new sentence" under § 404); *Sappleton*, 2021 WL 598232, at *3-4; *Wilson*, 2021 WL 1312904, at *3-4.

*Sappleton*, 2021 WL 598232, is particularly instructive. Like Babb, Sappleton was convicted of conspiracy to distribute 50 grams or more of crack cocaine and five kilograms or more of powder cocaine and received a mandatory sentence of life imprisonment as a result of the government's notice of enhanced penalties under § 851. *Id.* at *1. In considering a motion like this one, under 18 U.S.C. § 3582(c)(1)(A) and § 404 of the First Step Act, Judge Messitte found that courts can, and "indeed should," apply the current version of § 851 in imposing a new sentence. *Id.* at *4. Judge Messitte reasoned that "it would be inconsistent with the remedial purpose of the First Step Act to apply statutory penalties that Congress has since reduced and restricted by narrowing the types of convictions that trigger enhanced penalties." 2021 WL 598232, at *4 (citing *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020) (holding that a "[Section 404] resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional exceptions.")). Thus, he granted defendant's motion under § 404. *Sappleton*, 2021 WL 598232, at *5.[13]

Indeed, § 404(b) expressly permits the court to "impose a reduced sentence." And, as mentioned, the Fourth Circuit has emphasized that the use of the word "impose" signifies that a court should "not simply adjust the statutory minimum; it must also recalculate the Guidelines range." *Chambers*, 956 F.3d at 673; *see United States v. Boulding*, 960 F.3d 774, 784 (6th Cir.

---

[13] As indicated, *supra*, Judge Messitte also held that Sappleton was eligible for a sentence reduction under § 3582(c)(1)(A), finding that he established "extraordinary and compelling reasons" for relief based on the disparity between the sentence he received and the sentence he would have received today due to the First Step Act's changes to the penalty structure under § 851. 2021 WL 598232, at *3-4.

2020) ("[A] [section 404] resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations."); *Day*, 474 F. Supp. 3d at 801 (noting that "the use of the word 'impose' signifies that § 404 is not predicated on a pre-existing sentence that is simply modified; rather, the word 'impose' contemplates a sentencing process that begins essentially *ab initio*, without any carry-over effect from the original sentence and with the full range of considerations typically at play during a sentencing, including the law in effect at the time of the sentencing and the sentencing factors under 18 U.S.C. § 3553(a)."). Therefore, a reduced sentence imposed under § 404 is not a continuation of defendant's original sentence, but rather the imposition of a new sentence based on the penalties that apply at the time of resentencing, including any reduced penalties enacted as part of the 2018 FSA. *See Sappleton*, 2021 WL 598232, at *3 ("Applying defunct statutory penalties would also be inconsistent with the text of section 404(b), which 'expressly permits the court to 'impose a reduced sentence'— not to 'modify' or 'reduce,' which might suggest a mechanical application of the Fair Sentencing Act, but 'impose.'" (quoting *Chambers*, 956 F.3d at 672)).

I am persuaded that, in accordance with the text and purpose of the 2010 Fair Sentencing Act and the 2018 First Step Act, as well as recent guidance from the Fourth Circuit, it is appropriate to apply the current version of § 851, as amended by § 401 of the 2018 FSA, in imposing a new sentence for Babb. As noted, § 401 narrows the scope of § 851 enhancements such that Babb would be subject to a mandatory minimum of 15 years under Count One; he could be sentenced to life imprisonment, but that sentence is not required.

In an effort to salvage its opposition, the government states, ECF 254 at 16: "While this Court may be constrained by the *Gravatt* decision from finding Petitioner ineligible, the Court can deny relief as a matter of discretion." I turn to that issue.

## C. SENTENCE REDUCTION

Having determined that defendant is eligible for the imposition of a reduced sentence under either § 404 or § 3582(c)(1)(A), the Court must decide whether such a reduction is appropriate based on the Guidelines range that would apply under current law and the sentencing factors in 18 U.S.C. § 3553(a).

As noted, at sentencing Babb had a base offense level of 38 under U.S.S.G. § 2D1.1. ECF 271, ¶ 53. Babb also qualified as a career offender under U.S.S.G. § 4B1.1 as a result of five prior felony convictions.   But, because of the application of the murder cross-reference provision, Babb had a final offense level of 43, pursuant to § 2D1.1(d)(1) and § 2A1.1(a). *Id.* Based on a final offense level of 43 and a Criminal History Category of VI, Babb had an advisory Guidelines range of life for Count One. *Id.* ¶ 68.

Babb would no longer qualify as a career offender based on the same felony convictions today.  *See id.* ¶ 139.  Nevertheless, then and now, the career offender guideline is of no import regarding Babb's offense level or criminal history category.  *Id.*  This is because the murder cross-reference still applies, and his criminal history category remains a VI based on his criminal history points.  Therefore, the Guidelines range today remains life imprisonment for Count One, plus the mandatory sentence of five years, consecutive, for Count Seven.

However, and critically, Babb is no longer subject to a statutory, mandatory term of life imprisonment.  The Court may exercise its discretion to vary below the Guidelines range.

In exercising my discretion, I must consider the factors set forth in 18 U.S.C. § 3553(a). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines

range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

The government contends that the factors under § 3553(a) militate against granting defendant's Motion.  It urges the Court to find that the defendant is still a danger to the community, citing the seriousness of his offense and his extensive criminal history, including multiple crimes involving violence. ECF 254 at 18-21. According to the government, defendant is "clearly a violent recidivist who presents a danger to the community." *Id.* at 22.

Defendant acknowledges the seriousness of his offense and accepts "full responsibility" for his actions. ECF 248 at 32; *see* ECF 248-1 (defendant's letter to the Court).  However, he contends that a reduced sentence is warranted in light of his substantial post-offense rehabilitation and low risk of reoffending.  *Id.* at 32-40. And, he maintains that a reduction is warranted to bring his sentence in line with sentences that similarly situated defendants now receive in this District. *Id.* at 40-44.

As part of the § 3553(a) analysis, many judges in this District have considered a change in the penalties that a defendant would face if prosecuted today. *See, e.g., United States v. Chandler*, GLR-05-0181, ECF 119 at 1-2 (D. Md. May 14, 2020); *United States v. Decator*, 452 F. Supp. 3d 320 (D. Md. 2020), *aff'd*, *McCoy*, 2020 WL 7050097; *United States v. Laurey*, JKB-06-0586, ECF 81 at 1, 3 (D. Md. Feb. 19, 2020); *United States v. Wesley*, JKB-10-0118, ECF 73 at 1 (D. Md. Feb. 18, 2020); *United States v. Smith*, DKC-98-0252, ECF 92 at 4 (D. Md. Feb. 14, 2020); *United States v. Watts*, PJM-06-036, ECF 114 at 7 (D. Md. Feb. 6, 2020); *United States v. Thompson*, CCB-09-0128, ECF 123 at 2 (D. Md. Jan. 16, 2020). As Judge Bennett explained: "[C]hanges in the sentencing law landscape are relevant to the Court's analysis of whether the Court's sentence appropriately addresses 'the need for a sentence to provide just punishment,

promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public.'" *United States v. Johnson*, No. RDB-07-0153, ECF No. 183 at 10-11 (D. Md. Oct. 14, 2020).

If Babb were prosecuted today, it is quite likely that he would receive a sentence well below the one he received in 2007. For one thing, the mandatory minimum sentence applicable to Count One would now be 15 years, not life. And, his sentence is out of line with those of similarly situated defendants in this District. For instance, in addition to the examples discussed previously, Judge Bredar recently reduced life sentences for two codefendants, Kevin Jones and Daniel Hill, who, like Babb, were convicted of joining a drug conspiracy involving violence, including a murder committed by a codefendant. *United States v. Jones*, No. JKB-96-0399, ECF No. 634 (D. Md. Apr. 30, 2020); *United States v. Hill*, No. JKB-96-0399, ECF No. 635 (D. Md. Apr. 30, 2020); *see also United States v. Jones*, No. JKB-96-0399, ECF No. 623 (D. Md. Feb. 24, 2020); *United States v. Hill*, No. JKB-96-0399, ECF No. 621 (D. Md. Feb. 24, 2020). Judge Bredar determined that Jones and Hill were eligible for relief under § 404 of the First Step Act based on their convictions for conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. After determining that they were eligible for relief, he recalculated the applicable Guidelines range and found that the defendants had "a guidelines sentence of 480 months." ECF 634 at 4; ECF 635 at 2. Judge Bredar noted that the conspiracy involved violence, including a murder committed by a coconspirator that was foreseeable to each defendant. ECF 634 at 2; ECF 635 at 2. But, he concluded that 480 months "significantly overstates the Defendant's culpability and is not appropriate in light of Defendant's post-sentencing conduct." ECF 634 at 3; *see* ECF 635 at 3. Therefore, he reduced the sentences of both defendants to 330 months. ECF 634 at 3; ECF 635 at 4.

To be sure, the gravity of Babb's crimes cannot be minimized. Defendant was part of a conspiracy that distributed significant quantities of cocaine and crack cocaine. And, the conspiracy involved violence, including two murders.  It is not clear who pulled the trigger. Although the jury found defendant's coconspirator guilty of the charges pertaining to the murders, the jury was unable to reach a verdict as to defendant on those charges.

Babb's criminal history is extensive.  The PSR lists 22 prior criminal convictions. ECF 271, ¶¶ 72-137. These convictions include two drug trafficking offenses in North Carolina, *id.* ¶¶ 105, 123; several drug possession offenses, *id.* ¶¶ 129, 132, 135; several misdemeanor larcenies, *id.* ¶¶ 72, 75, 78, 81, 84; and multiple convictions for breaking and entering. *Id.* ¶¶ 87, 90, 93, 96. Defendant was also convicted of multiple assault charges, *id.* ¶¶ 102, 108, 114-15, 120, 126; carrying a concealed weapon, *id.* ¶ 99; and communicating threats. *Id.* ¶ 111, 117. However, it appears that defendant never received a sentence longer than a year for any of these offenses.[14]

Notably, Babb's conduct for the past 16 years, while in BOP custody, is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'"  *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *Lancaster*, 2021 WL 1823287, at *3 ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *United States v. McDonald*, 986 F.3d 402 (4th Cir. 2021) (noting that on a motion to reduce sentence under the First Step Act, district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 F. App'x 1008, 1009 (4th

---

[14] As discussed, there seems to be one notable prior conviction missing from the PSR. According to the government's § 851 Notice, in 1993 Babb was convicted of possession with intent to sell 40.9 grams of cocaine and trafficking of cocaine, for which he received a sentence of ten years' imprisonment. ECF 117, ¶ (a).

Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 F. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

Of import here, Babb appears to be a model prisoner. Indeed, the government concedes that defendant's post-sentencing conduct has been "good." ECF 254 at 17 n.9. In the nearly 17 years of Babb's incarceration, he has not incurred any disciplinary infractions. ECF 248 at 33. This is quite commendable, particularly given that Babb complied with the rules even when he had no reason to anticipate that a change in the law might one day give him a reason for hope.

Moreover, Babb has continuously endeavored to improve himself and those around him. He has completed countless educational and vocational programs and participated in extensive volunteer work. ECF 248-2 at 1-2 (summary of Babb's coursework); ECF 248-7 (summary of Babb's certificates and achievements); ECF 248-17 (Inmate Transcript). Among many other things, Babb has volunteered as a suicide watch companion, an adult continuing education instructor, and a mentor in the "Men of Influence" program in Lewisburg's Reintegration Unit. *See* ECF 248-7; ECF 248-30; ECF 248-35.

And, Babb has received numerous positive performance evaluations. For instance, an administrative note from 2019 states that "Babb continues to take initiative in seeking out programs aimed a[t] self-improvement and personal change, and he has also taken a leadership role in the Men of Influence program as a peer facilitator. He has demonstrated a commitment to guiding others to making personal change. Inmate BABB has become a role model resource among other inmates and continues to take an active role in helping others…." ECF 248-7. In

addition, in 2013 Babb was chosen to be part of the "Work Cadre" at Lewisburg, which is "a hand-selected group of inmates who have presented themselves to be excellent role model individuals" and "show the best work ethic." ECF 248-6. According to Babb's case manager, "Babb has proven himself time and time against to be a key member of the work cadre." *Id.*

In this regard, it is also noteworthy that Babb now accepts responsibility for his criminal conduct. In a letter to the Court, Babb stated, in part: "I would not try to diminish the severity of my case…. I take full responsibility for my decisions and my actions. I' [sic] am truly sorry to all of those people that my negative decisians [sic] affected…. I live with those regrets daily….Those decision[s] haunt me daily they have cost me so much…." ECF 248-1.[15]

Babb is the father of four children from two different relationships. ECF 271, ¶¶ 173, 175. To Babb's credit, while he has been incarcerated, he has endeavored to maintain ties with members of his family, including his children. ECF 248 at 38-39; *see* ECF 248-41 to ECF 248-52 (Letters from Babb's family members and close friends).  And, if released, Babb plans to live with his sister and work in construction. ECF 248 at 38.

In addition, defendant, who was born in February 1971, is now 50 years of age.  Thus, if his sentence is reduced, in just a few years he will be of an age by which he poses a reduced risk of recidivism.  *See, e.g., United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *4 (D. Md. Aug. 17, 2020) (finding a recidivist offender would pose "little danger to the public at this point" because of his age of 63 years) (citing U.S. Sent. Comm., The Effects of Aging on Recidivism Among Federal Offenders, 2017, at 3 ("Older offenders were substantially less likely than younger offenders to recidivate following release ... 13.4 percent of offenders age 65 or older at the time of release were rearrested[.]")).

---

[15] Babb did not specifically address his role in the two murders.

It is also noteworthy that Babb's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

In sum, considering Babb's efforts towards rehabilitation, his model behavior while incarcerated, despite a seeming lack of hope that he would ever see freedom, and the changes in the sentencing landscape since 2007, a reduction in the sentence to a total of 360 months or 30 years (25 years plus 5 years) is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Babb's sentence.

## IV.  CONCLUSION

The Court has carefully considered all of the arguments on both sides. Defendant's role in drug trafficking was not minor. And, the defendant was implicated in two murders. That said, a reduction in the sentence is amply warranted here, as the discussion above indicates.

One of the purposes of sentencing is rehabilitation. Babb has been a model prisoner who has made every effort to turn his life around, and the Court applauds his efforts. Only time will truly tell if the goal of rehabilitation has been achieved here.  But, the defendant's post-sentencing conduct in the BOP certainly bodes well for a positive outcome.

Therefore, I shall reduce defendant's sentence for Count One from life imprisonment to a term of 25 years, dating from August 23, 2004. Babb's concurrent sentence of 20 years for Count

Two and a consecutive sentence of five years of imprisonment for Count Seven remain unchanged. This reduces Babb's sentence to a total of 360 months or 30 years' incarceration. And, I shall adopt all of the previously imposed terms and conditions of supervised release, as initially imposed.

An Order follows, consistent with this Memorandum Opinion.

Date:   June 4, 2021                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge