**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. ELH-04-190 |
| WALTER BABB,[1] | |
| *Defendant*. | |

**MEMORANDUM OPINION**

In August 2007, Judge Andre Davis, to whom this case was then assigned, sentenced defendant Walter Babb to life imprisonment plus 60 months for drug trafficking and firearm offenses, including a drug conspiracy that resulted in the shooting deaths of two people.[2]  By Memorandum Opinion (ECF 275) and Order of June 4, 2021 (ECF 276), I reduced defendant's sentence to 30 years of imprisonment, pursuant to the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i) and § 404, with credit dating to August 23, 2004.  *See* ECF 279 (Amended Judgment).

Dissatisfied with that ruling, on November 4, 2022, defendant filed a "Motion for Reconsidearation [sic] of Motion to Reduce Sentence Pursuant to the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i) or In the Alternative for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act."  ECF 306. Then, on December 19, 2022, Babb filed

---

[1] The Docket repeatedly identifies defendant by the name of Walter "Babbs."

[2] Judge Davis was elevated to the Fourth Circuit in 2009.  The case was reassigned to me on July 16, 2011.  *See* Docket.

a "Motion to Supplement and to Reinstate."  ECF 310.  The government opposes the motions.

ECF 318.  Babb has replied.  ECF 319.  Babb filed another supplement on September 13, 2023.

ECF 326.  Thereafter, on December 1, 2023, Babb filed yet another supplement.  ECF 327.  I shall

refer to ECF 306, ECF 310, ECF 326, and ECF 327 collectively as the "Motion."  The Office of

the Federal Public Defender ("FPD") declined to supplement defendant's Motion.  *See* ECF 308,

ECF 308-1.[3]  On September 6, 2024, defendant wrote to the Court, asking the Court to consider

his Motion.  ECF 328.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the

Motion.

## I.      Factual and Procedural Background[4]

Babb and two codefendants were charged with various drug and firearms offenses in an

Indictment issued on April 7, 2004.  ECF 1.[5]  Superseding indictments were returned on August

11, 2004; September 1, 2004; and April 6, 2006.  *See* ECF 10, ECF 24, ECF 106.

Of relevance here, the Third Superseding Indictment (ECF 106) charged Babb and a

codefendant, James Moore, with conspiracy to distribute and possess with intent to distribute five

kilograms or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C.

---

[3] The FPD submitted defendant's earlier motion under 18 U.S.C. § 3582.  *See* ECF 248; *see also* ECF 259, ECF 260, ECF 261, ECF 262, ECF 266, ECF 267, ECF 268, ECF 269, ECF 272, ECF 273.

[4] The facts of this case were set forth previously in this Court's Memorandum Opinion of April 10, 2012 (ECF 197), with regard to motions filed under 28 U.S.C. § 2255 by both Babb and Moore, and in the Court's Memorandum Opinion of June 4, 2021 (ECF 275).  I incorporate those summaries here.  I also include information contained in the Presentence Investigation Report (ECF 271).

[5] Due to the age of the case, many of the pleadings are not electronically available.  Filings became consistently available electronically in 2011, with sporadic availability prior to that time. *See*, *e.g.*, ECF 131, ECF 143.

§ 846 (Count One); conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Two); two counts of discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Three and Four); two counts of use of a firearm to commit murder, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(j) (Counts Five and Six); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Seven).

Babb and Moore proceeded to a jury trial that began on April 2, 2007. Prior to submission of the case to the jury, the government dismissed Counts Five and Six. ECF 197 at 7. What follows is a summary of some of the evidence presented at trial.

From at least 2002 through 2004, Babb was part of a drug trafficking organization that distributed large quantities of powder cocaine and cocaine base. ECF 271 (Presentence Report or "PSR"), ¶¶ 9–10.[6] From late 2002 to early 2003, Babb distributed one half kilogram of crack cocaine per week. *Id.* ¶ 9. Babb also traveled from Greensboro, North Carolina, where he lived, to El Paso, Texas to broker high-volume cocaine purchases. *Id.* ¶ 10.

In October 2003, Babb and Moore traveled to El Paso, joined by Willie Robinson and Alexandria Withers, to pursue a crack cocaine transaction with an individual named Rey Sanchez. *Id.* In late October 2003, Babb, Moore, Robinson, and Withers returned to Babb's home in Greensboro. *Id.* ¶ 27. According to several witnesses, half of the deal with Sanchez was done in El Paso and the other half of the deal was to be completed in Greensboro on November 5, 2003. *Id.* ¶¶ 10, 28. Robinson brought at least $100,000 to the meeting. *Id.* ¶ 10. Apparently, Moore

---

[6] Judge Davis's Chambers file contained a copy of the PSR. I submitted it for docketing, under seal, when I was considering defendant's initial motion for compassionate release.

and Robinson had a monetary dispute. ECF 182-1 at 9.  As discussed, *infra*, Robinson's money was recovered from Moore on November 6, 2003.  *Id.* ¶ 10.

On November 6, 2003, Porsha Harper, Babb's girlfriend, agreed to drive Moore to New York.  *Id*. at 10.  While in Cecil County, Maryland, Maryland State trooper Jacob Cameron stopped the vehicle, a Dodge Intrepid, for speeding.  ECF 197 at 4; ECF 271, ¶ 11.  The car was registered to Barbara Hayes, the mother of Robinson.  *Id.* ¶ 15.  At the time of the stop, Moore was driving, and he could not produce a driver's license.  *Id*. ¶ 11.

Trooper Cameron patted Moore down after noticing a bulge in one of his pockets, and he discovered approximately $1,000 in Moore's pocket.  ECF 197 at 4.  The trooper was suspicious because of the amount of cash, as well as discrepancies in statements by Moore and Harper regarding Moore's name, their destination, and ownership of the Intrepid.  *Id.*  Moreover, he noted that the rear end of the vehicle appeared to be weighted down.  *Id*.; ECF 271, ¶ 12.  The trooper called for backup, and two additional officers responded.  ECF 197 at 4.

Trooper Cameron continued to speak with Harper, who appeared shaken.  *Id.*  The trooper commented on the unusually low rear end of the vehicle.  Harper then asked the trooper if he wanted to look in the trunk. The trooper answered in the affirmative.  *Id.*  Harper then opened the trunk.  It contained two corpses.  *Id.*  Each body was wrapped in bedding, plastic bags, and a shower curtain liner.  *Id*.; *see also* ECF 271, ¶¶ 12, 13.  The bodies were later identified as those of Robinson and Withers.  *Id*. ¶ 13.  Robinson had been shot five times and Withers had been shot nine times.  *Id.*

Moore's fingerprints were recovered from the bags wrapped around the bodies as well as from a separate trash bag recovered from the trunk and money wrappers seized from the vehicle. ECF 271, ¶¶ 17, 18, 21.  Other items in the trunk, including a black shower curtain and a floral

bathmat, were identified as coming from Babb's residence. *Id.* ¶ 18. But, his fingerprints were not recovered. ECF 197 at 5.

Harper and Moore were taken into custody at the scene. ECF 271, ¶ 12.[7] In a search of Moore incident to arrest, a substantial amount of cash was recovered. *Id.* ¶ 16. Some of the cash also appeared to be bloodstained. *Id.* A five-dollar bill recovered from Moore's right pocket was later found to contain Robinson's DNA. *Id.* ¶ 16. At the scene, Moore informed the officers that there was over $100,000 in cash inside a duffel bag in the vehicle that was to be used to pay for cocaine in New York. *Id.* ¶¶ 10, 14. In a post-arrest statement, Moore explained that he was a drug dealer transporting drugs for Sanchez. *Id.* ¶ 14.

Several other significant items were recovered from the Intrepid, including shell casings, a shirt stained with Robinson's blood, a map to El Paso, a woman's boot containing $2,000, a calendar with Babb's phone number written on it, and a pen inscribed with the name of Sanchez's El Paso auto-repair business. ECF 197 at 5; ECF 271, ¶ 16.

Following the arrest, Babb paid Harper's bail ($21,000 in cash) and sent at least $35,000 to Davita Bush, another acquaintance of Moore, with whom Moore sold drugs. ECF 271, ¶¶ 10, 23, 40, 41. In addition, on two occasions, Bush traveled to Babb's home in North Carolina to obtain quantities of crack cocaine and money from him. *Id.* ¶ 42. Babb also changed his cell phone number, moved out of his house, and disposed of some of his furniture. *Id.* ¶ 32. Robinson's DNA was later recovered from the cushion of one of the discarded couches. *Id.*

Babb was arrested in Greensboro in August 2004. *Id.* ¶ 34. After his arrest, officers executed a search warrant at his home and discovered two assault rifles, a Glock pistol, a scale, some Ecstasy pills, and an identification card for Babb. *Id.* ¶ 47.

---

[7] On November 9, 2006, Harper pleaded guilty to obstruction of justice. *See* Docket.

On September 8, 2006, a week before a motions hearing, the government filed a sentencing enhancement notice for Babb under 21 U.S.C. § 851 (the "§ 851 Notice").  ECF 117, ECF 329.[8] The § 851 Notice stated that Babb had five prior felony drug offenses.  However, one of the prior convictions that qualified as a predicate offense does not appear in the PSR.  *See* ECF 271, ¶¶ 123, 129, 132, 135.  According to the government's § 851 Notice, in 1993 Babb was convicted for possession with intent to distribute 40.9 grams of cocaine and trafficking of cocaine, for which he received a sentence of ten years' imprisonment.  ECF 117, ¶ (a); ECF 329, ¶ (a).

On April 19, 2007, the jury convicted Babb of Counts One, Two, and Seven.  Moore was convicted of Counts One, Two, Three, Four, and Seven.  But, the jury was unable to reach a verdict as to Counts Three and Four with respect to Babb.  ECF 135.  As to Count One, the jury determined that five kilograms or more of cocaine and 50 grams or more of crack cocaine were attributable to Babb.  *Id*.  The government elected not to re-try Babb as to Counts Three and Four.

According to the PSR, Babb had a base offense level of 38 for Count One, the drug conspiracy count, pursuant to § 2D1.1(c)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), based on a finding that his criminal activity involved over 1.5 kilograms of crack cocaine and 20 kilograms of powder cocaine.  ECF 271, ¶ 53.  And, he had a base offense level of 24 for Count Two (gun conspiracy).  *Id*.  However, in determining Babb's Guidelines range for Counts One and Two, the PSR applied the murder cross reference provision, pursuant to U.S.S.G. § 2D1.1(d)(1) and § 2A1.1(a), based on the murders of Withers and Robinson. *Id*. ¶ 53.  In particular, U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the

---

[8] I located a copy of this document in Judge Davis's Chambers file.  Because ECF 117 is not electronically available, I have docketed it again, and it appears at ECF 329.

territorial or maritime jurisdiction of the United States, apply § 2A1.1." Therefore, the PSR reflected a base offense level of 43. ECF 271, ¶¶ 53, 61.

Babb had a Criminal History Category of VI based on 23 criminal history points. *Id*. ¶ 138. He also qualified as a career criminal under U.S.S.G. § 4B1.1 as a result of multiple felony convictions. *Id*. ¶ 139; *see also id*. ¶¶ 87, 90, 93, 96, 105, 123. However, if Babb were sentenced today, only two of the offenses would constitute proper predicates for a career offender designation. *See id*. ¶¶ 105, 123. In any event, the career offender designation had no impact on Babb's offense level or criminal history category. As noted, with 23 criminal history points, Babb had a criminal history category of VI. And, the murder cross reference controlled his offense level. *Id.* ¶¶ 64, 66.

Count One ordinarily would have required a mandatory minimum sentence of ten years. But, based on the § 851 Notice, Babb faced a mandatory life sentence. *Id*. ¶ 158; 21 U.S.C. §§ 841(b)(1)(A), 851. With an offense level of 43 and a criminal history category of VI, the Guidelines for Count One also called for a sentence of life imprisonment. *Id.* ¶ 161.

Count Seven, the conviction for a violation of 18 U.S.C. § 924(c), required a mandatory minimum sentence of five years, consecutive, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). *Id.* ¶ 160. Count Two had a statutory maximum of twenty years of imprisonment. *Id.* ¶ 159. Therefore, the Guidelines called for life imprisonment for Count One, plus 60 months, consecutive, for Count Seven. *Id.* ¶¶ 67–69, 161.

At sentencing on July 24, 2007, the defendant was 36 years of age. The government sought the mandatory sentence of life imprisonment plus 60 months. ECF 192-2 (Sentencing Transcript) at 2. The prosecutor acknowledged that the government did not "know who pulled the trigger in this case," and speculated that the jury "probably had an issue as to Mr. Babb's role in the actual

murders." *Id*.  But, the prosecutor said, *id*. at 5: "I would argue there was very clearly [Babb's] involvement in a drug trafficking conspiracy in the course of which . . . two first degree murders occurred, and that's really all that's required for the [murder] cross reference."

Defense counsel noted a cursory objection to the application of the murder cross reference. *See id.* at 6.

Judge Davis found that the murder cross reference was warranted because, "at a minimum, Mr. Babb was an aider and abettor to the actual murder[s], providing support for the conspiracy." *Id*. at 7.  Judge Davis also stated, *id.*: "The record will reflect that in the presentence report Mr. Babb shows a person who has been very, very active in the criminal community and as evidenced by Mr. Moore a capacity for violence that it's [sic] striking."

The Court sentenced Babb to life in prison as to Count One; 20 years' imprisonment as to Count Two, concurrent with Count One; and 60 months' imprisonment as to Count Seven, consecutive, for a total term of life imprisonment plus 60 months.  ECF 143 (Judgment).

Babb's conviction and sentence were affirmed on direct appeal.  ECF 178.  *United States v. Babb*, 369 F. App'x 503 (4th Cir. 2010).  Defendant's petition for certiorari to the Supreme Court was denied on October 4, 2010.  *United States v. Babb*, 562 U.S. 878 (2010).

Thereafter, Babb filed a motion for post-conviction relief under 28 U.S.C. § 2255, raising numerous contentions.  *See* ECF 187.  I denied his motion by Memorandum Opinion and Order of April 10, 2012.  ECF 197, ECF 198.  Babb's appeal to the Fourth Circuit was dismissed.  ECF 209; *see United States v. Babb*, 485 F. App'x 641 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1840 (2013).  Babb subsequently filed a "Motion for Relief from Judgment," pursuant to Fed. R. Civ. P. 60(b).  ECF 213.  I denied that motion by Memorandum and Order of June 17, 2014.  ECF 216, ECF 217.

Then, on May 4, 2015, Babb moved for a reduction of sentence under Amendment 782 of the Guidelines.  ECF 219.  I denied that motion by Order of November 25, 2015.  ECF 229.

In June 2019, Babb, pro se, filed a submission titled:  "Re: Eligibility of The Retroactive Fair Sentencing Act–and–Request For Assistance In Filing A Motion For Resentencing . . . ." ECF 236 (ellipsis in original).  In August 2019, the Court appointed the FPD to represent Babb in proceedings pursuant to Section 404 of the FSA.  ECF 240.  On June 30, 2020, Babb, through counsel, moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, for a reduction in sentence pursuant to § 404 of the FSA.  ECF 248.  By Order of May 19, 2021 (ECF 270), I asked counsel to provide their respective positions as to the recalculated Guidelines that would apply to Babb.  *See* ECF 272 (defendant); ECF 274 (government).  In a 39-page Memorandum Opinion (ECF 275) and Order (ECF 276), of June 4, 2021, I reduced defendant's total sentence from life imprisonment plus 60 months to 360 months (30 years).

Notwithstanding the substantial reduction in defendant's sentence, Babb nonetheless filed his Motion (ECF 306), asking the Court, *inter alia*, to reconsider its ruling in light of *Concepcion v. United States*, 597 U.S. 481 (2022).  *Id.* at 1.  In *Concepcion*, the Supreme Court concluded that, under the Frist Step Act, a district court may consider intervening changes of law in deciding whether to reduce a sentence.  *Id.* at 487, 500.  Babb also argues that he is no longer subject to career offender enhancements, and that his sentence should be further reduced according to a Guideline range of 210 months to 262 months.  ECF 306 at 4.  In addition, Babb cites a proposed amendment to the sentencing Guidelines as an intervening change in law.  ECF 327 at 3–4.

Defendant, who is now 53 years of age, is currently incarcerated at USP Atwater in California.  *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by

BOP Register Number 22325-057) (last accessed October 9, 2024).  He has a projected release date of April 7, 2030.  *See id*.

## II.      Legal Standard

### A.  Motion for Reconsideration

Defendant has moved for reconsideration (ECF 306) of the ruling of this Court issued on June 4, 2021 (ECF 275, ECF 276), by which I reduced defendant's sentence of life imprisonment plus five years to a total of thirty years of imprisonment.  The Motion (ECF 306) was docketed on November 4, 2022.  *See* Docket.  Defendant's Certificate of Service is dated November 1, 2022. ECF 306 at 5.  Thus, the Motion was filed more than a year after the Court issued its Order of June 4, 2021.  *See* Docket.

Notably, the Fourth Circuit has stated that "the Federal Rules of Civil Procedure do not apply to motions under § 3582 . . . because § 3582 motions—which seek only to alter terms of imprisonment—are criminal in nature."  *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir. 2010) (emphasis removed).  And, because "'§ 3582(c) does not prevent prisoners from filing successive motions' for compassionate release," courts should treat a defendant's reconsideration motion "as a new motion for compassionate release."  *United States v. Hedspeth*, No. 22-6943, 2023 WL 7124547, at *1 (4th Cir. Oct. 30, 2023) (quoting *United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022)).

Therefore, I will construe the Motion as a renewed motion under 18 U.S.C. § 3582.[9]

### B.  18 U.S.C. § 3582

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

---

[9] Given the time that has elapsed since the Motion was filed, I shall assume that exhaustion has been satisfied.

18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *Bethea*, 54 F.4th at 831; *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582(c)(1)(A), "commonly known as the 'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see Hargrove*, 30 F.4th at 194; *see also United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). The provision is rooted in the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because

§ 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act of 2018 ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020). In particular, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. And, of relevance, under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

12

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.   "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis."  *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*).

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54; *see also Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements); 28 U.S.C. § 994(t).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023)

(emphasis added). Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or

the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[10]

---

[10] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. The Section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). However, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*[11] And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make

---

reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

[11] The Court is mindful that defendant filed his Motion before November 1, 2023, when the amendment to U.S.S.G. § 1B1.13 went into effect. But, even if the Court had decided this case prior to the amendment, the outcome would have been the same, as discussed, *infra*.

findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors, to the extent applicable, in exercising its discretion); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered

the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam). In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct.").  In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

Davis, 99 F.4th 647, is illustrative.  The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654, 655.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.  According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [defendant] would already be out of prison."  *Id.*  The Court stated, *id.*:  "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial."  *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### C.  Section 404 of the First Step Act

Section 3582(c)(1)(B) of 18 U.S.C. provides:  "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case –...(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." And, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ."  18 U.S.C. § 3582(c)(2); s*ee United States v. Collington*, 995 F.3d 347, 353 (4th Cir. 2021) (noting that "§ 3582(c)(2) permits defendants to move for a reduced sentence based on

retroactive amendments to the Guidelines"); *United States v. Smalls*, 720 F.3d 193, 195-96 (4th Cir. 2013).

The Fair Sentencing Act of 2010 ("2010 FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), took effect on August 3, 2010.  It "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *see Concepcion*, 597 at 488 (noting that the 2010 FSA was passed "to correct the harsh disparities between crack and powder cocaine sentencing"); *Dorsey v. United States*, 567 U.S. 260, 264 (2012); *Collington*, 995 F.3d at 351 (noting that the 2010 FSA "reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes"); *United States v. Wirsing*, 943 F.3d 175, 177–78 (4th Cir. 2019).

Section 404 of the 2018 FSA expressly "makes retroactive certain provisions" of the 2018 FSA.  *Jackson*, 952 F.3d at 495; *see Concepcion*, 597 U.S. at 488; *United States v. Lancaster*, 997 F.3d 171, 173 (2021); *Collington*, 995 F.3d at 352; *United States v. Woodson*, 962 F.3d 812, 813 (4th Cir. 2020); *Chambers*, 956 F.3d at 669–70; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020); *Wirsing*, 943 F.3d at 177–180; *United States v. Venable*, 943 F.3d 187, 188–89 (4th Cir. 2019).  In particular, the 2018 FSA authorizes the modification of a previously imposed sentence for a defendant affected by the statutory changes to the penalty ranges for crack cocaine offenses.  *See, e.g.*, *Jackson*, 952 F.3d at 495; *United States v. Foster*, 2022 WL 2826184, at *1 (4th Cir. July 20, 2022) (per curiam); *United States v. McDonald*, 986 F.3d 402, 408–09 (4th Cir. 2021).

Of relevance here, Congress increased the threshold quantities needed to trigger mandatory sentencing ranges associated with crack cocaine offenses.  *See Dorsey*, 567 U.S. at 269; *Woodson*,

962 F.3d at 812; *Gravatt*, 953 F.3d at 260.  In particular, the crack-to-powder cocaine disparity was reduced from 100-to-1 to 18-to-1.  *Dorsey*, 567 U.S. at 269; *Gravatt*, 953 F.3d at 260; *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013), *cert. denied*, 572 U.S. 1071 (2014).

Under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than 28 grams of cocaine base carries a maximum of 20 years imprisonment; the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of cocaine base is five years to 40 years of imprisonment; and the sentencing range for possession with intent to distribute more than 280 grams of cocaine base is ten years to life imprisonment.  Section 3 of the 2010 FSA, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.

The Sentencing Commission later amended the Guidelines to conform to the statute. *Gravatt*, 953 F.3d at 260.  However, the 2010 FSA did "not apply its changes retroactively," so as to "alter statutory minimum terms of imprisonment" that were previously in effect.  *Id*.  With the enactment in 2018 of the First Step Act, Congress rectified the inequity.  *Id*.

Section 404(b) of the 2018 FSA "renders these reforms retroactive by authorizing a district court 'that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'"  *Woodson*, 962 F.3d at 813; *see Lancaster*, 997 F.3d at 174. In other words, under § 404 of the 2018 FSA, the provisions of the 2010 FSA apply retroactively to defendants who were sentenced prior to August 3, 2010, *i.e.*, the effective date of the 2010 FSA.  *United States v. Charles*, 932 F.3d 153, 162 (4th Cir. 2019).  This means that it applies to Babb, as I previously determined.  *See* ECF 275 at 27.

### III.   Discussion

#### A.  Extraordinary and Compelling Circumstance

Defendant seeks compassionate release.  Babb claims that, using the recalculated Guidelines, he is subject to a sentencing range of 210 to 262 months.  ECF 306 at 4.  He points out that his prior convictions do not qualify as career offender predicates and do not qualify for a sentencing enhancement under § 851.  *Id.*

The government opposes the Motion in the first instance because it contends it "must be denied as [a] legal nullit[y]."  ECF 318 at 2.  It adds, *id.*:  "[E]ven if his claims are not legally barred, they are substantively meritless."

The government cites *United States v. Ferguson*, 55 F.4th 262, 266–70 (4th Cir. 2022), for the proposition that "defendants cannot transmogrify sentencing claims (which should have been raised in direct appeals and habeas petitions) into compassionate release vehicles."  ECF 318 at 9.  The government adds, *id.*:  "Babb cannot claim any extraordinary and compelling circumstance based on change in his guidelines range because there is in fact no real change in his guidelines: he would still be subject to a range of life because of the murder cross-reference."

Babb attaches to his Motion his lawyer's response to the Court's Order of May 19, 2021 (ECF 270), which asked counsel to provide their respective positions as to Babb's recalculated Guidelines.  ECF 306-1.  This response, as the government points out, concedes that Babb's Guidelines are calculated under U.S.S.G. § 2A1.1 because of the murder cross reference.  *Id.* at 1–2.  Because "Judge Davis found at sentencing that [Babb] aided and abetted the murders committed in furtherance of the drug conspiracy," Babb's "final advisory guidelines range is life."  ECF 272 at 1; ECF 306-1 at 2 (same).  Defense counsel added, *id.*:  "Notably, Mr. Babb is no longer subject to the career-offender enhancement because his prior convictions for felony breaking and entering,

felony larceny, and assault do not qualify as career-offender predicates . . . . Regardless, the career-offender enhancement does not impact his guidelines range because § 2A1.1 calls for a higher offense level and he falls within a criminal history category VI without the enhancement."

In his Reply, Babb contends that this Court granted his sentence reduction "with out [sic] addressing Section 403 and 404 due to the First Step Act" and "[s]pecifically Babb['s] claims of the 851 enhancement based on guideline range 210 to 262 months as detailed by the Pre-Sentencing report and recomedation [sic]."  ECF 319 at 1.

Further, defendant contends that his Motion is based on intervening changes in the law, including *Concepcion v. United States*, 597 U.S. 481 (2022) and *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021).  *Id*.  He maintains that *Concepcion* permits district courts to consider intervening changes of the law, such as changes to the Sentencing Guidelines, or changes of fact, such as behavior in prison, in adjudicating a First Step Act motion.  *See id*.  Further, he argues that the government fails to address the issue of the § 851 Notice and the Guidelines range "after this Court grant relief from the Cross-refrence [sic] based on Such as behavior record inside the BOP prison."  *Id*. at 2.

But, I previously considered Babb's argument concerning the § 851 sentencing enhancement.  *See* ECF 275 at 20–25, 32.  I stated, *id*. at 21–22:  "Accordingly, only defendant's 1993 conviction constitutes a "serious drug felony" that qualifies as a predicate offense for an § 851 enhancement under the amended version of § 851. Therefore, if defendant were sentenced today, an § 851 enhancement would require a mandatory minimum term of 15 years' imprisonment for Count One, rather than life imprisonment. . . . I conclude that the Court has the authority to consider the legislative change to § 851 in conducting its review of defendant's Motion. And, a

gross sentencing disparity may constitute an extraordinary and compelling reason to grant compassionate release."

Contrary to Babb's assertion, the Court also addressed his arguments concerning § 404 of the First Step Act. *See* ECF 275 at 25–31. Indeed, I stated: "Babb's drug conspiracy conviction in violation of 21 U.S.C. § 841(b)(1)(A) is clearly a 'covered offense' under § 404 of the 2018 FSA. . . . Moreover, Babb was sentenced prior to August 3, 2010; he has directed his motion for a reduction to the court that originally sentenced him; and this is his first such motion. . . . Therefore, Babb is eligible for relief." *Id.* at 27.

Indeed, this was a basis on which I reduced Babb's sentence. *See United States v. Moore*, ELH-04-190, 2022 WL 2835032, at *21 (D. Md. July 19, 2022) ("Thus, if Babb were sentenced today, an § 851 enhancement would have required a mandatory minimum term of 15 years' imprisonment for Count One, rather than life imprisonment. Although the Guidelines range would remain unchanged, this was a key factor in my finding of extraordinary and compelling circumstances as to Babb because, if sentenced today, the Court would not be compelled to sentence Babb to life imprisonment."); *id.* at *21 ("In addition, in ECF 275, I also found Babb to be eligible for resentencing under Section 404 of the First Step Act, because he was convicted of a cocaine base offense.").

In arguing that there is an intervening change in law, defendant also cites to a proposed amendment to the sentencing Guidelines that would prohibit acquitted conduct from being considered relevant conduct for purposes of determining the guideline range. ECF 327 at 3–4. The amendment to which Babb refers has yet to take effect. *See Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, U.S. SENTENCING

COMMISSION (April 30, 2024), https://perma.cc/B773-WRFB.   The effective date for these amendments is November 1, 2024.  *See id.*

Additionally, even if the amendment were already in effect, the acquitted conduct amendment to which Babb refers requires the conduct to be that for which the "defendant was criminally charged *and acquitted* in federal court."  *Id*. at 1 (emphasis added).  Babb was not acquitted of the murder charges.  Rather, the jury failed to reach a verdict and the judge declared a mistrial.  ECF 135.  Thus, even if the amendment were in effect, it would not apply to Babb.

Therefore, I conclude that Babb has not established an "extraordinary and compelling" basis for a further sentence reduction, beyond that which I previously awarded.

### B.  The 3553(a) Factors

Even if a defendant has identified an "extraordinary and compelling reason" for relief, this does not end the inquiry.  The Court must also consider whether the sentencing factors under 18 U.S.C. § 3553(a) warrant a sentence reduction.  *See Brown*, 78 F.4th at 128; 18 U.S.C. § 3582(c)(1)(A).  Although Babb has not established an "extraordinary and compelling" basis for a further sentence reduction, beyond what I previously granted, I shall assume, *arguendo*, that he has done so, in order to address briefly the § 3553(a) factors.

The applicable factors in § 3553(a) include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant stated that he "truly and completely take[s] full responsibility for the choices" he made.  ECF 310-1 at 5. He adds, *id*.:  "I also work hard ever [sic] day to make amends by not

only changing myself and my thinking, but by giving back and helping others to take responsibility of their lives.  I try to help them see things differently, to understand that in order to change our conditions, we must change what is in our hearts and our minds.  This comes through selfless service."

The government contends that "Babb has failed to demonstrate the 3553(a) factors militate in favor of release."  ECF 318 at 11 (capitals altered).  Indeed, the government points to the seriousness of the offense, including defendant's engagement in "large-scale, multi-state trafficking," as well as his possession of "a plethora of weapons," and his involvement in a double murder.  *Id*. at 12.  Moreover, the government argues that defendant has served only "a little more than half of what this Court said was appropriate" in the previous Memorandum Opinion.  *Id*.  The government also contends there is still a need to protect the public, given defendant's "long criminal history."  *Id*. at 13.

To be sure, the gravity of Babb's crimes cannot be minimized. Defendant was part of a conspiracy that distributed significant quantities of crack cocaine. And, the conspiracy involved violence, including two murders. To be sure, it is not clear who pulled the trigger that led to two deaths. Although the jury found defendant's coconspirator guilty of the charges pertaining to the murders, the jury was unable to reach a verdict as to defendant with respect to those charges. Nevertheless, Judge Davis recognized, at the very least, that defendant had a role in the murders.

Notably, Babb's criminal history is extensive and disturbing. The PSR lists 22 prior criminal convictions.  ECF 271, ¶¶ 72–137.  These convictions include two drug trafficking offenses in North Carolina, *id*. ¶¶ 105, 123; several drug possession offenses, *id*. ¶¶ 129, 132, 135; several misdemeanor larcenies, *id*. ¶¶ 72, 75, 78, 81, 84; multiple convictions for breaking and entering, *id*. ¶¶ 87, 90, 93, 96; several assault convictions, *id*. ¶¶ 102, 108, 114–15, 120–21, 126–

27; carrying a concealed weapon, *id.* ¶ 99; and communicating threats. *Id.* ¶¶ 111, 117–18. However, for these offenses, it appears that defendant never received a sentence longer than a year for any of these offenses.

Moreover, as discussed, the PSR omitted defendant's 1993 conviction for possession with intent to sell 40.9 grams of cocaine and trafficking of cocaine. *See* ECF 117, ¶ (a); ECF 329, ¶ (a). For that offense, Babb received a sentence of ten years' imprisonment.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]." *McDonald*, 986 F.3d at 412; *see Concepcion*, 597 U.S. at 486 ("When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction."); *id.* at 491 (stating that sentencing judges must consider "the whole person before [them]"); *Koon v. United States*, 518 U.S. 81, 113 (1996) (recognizing that a judge at sentencing considers the defendant "as an individual"); *Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See Lancaster*, 997 F.3d at 175 ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider

defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct; *see also Pepper*, 562 U.S. at 490 (recognizing that, on remand for resentencing, the district court may consider evidence of a defendant's rehabilitation). However, rehabilitation alone does not warrant a defendant's immediate release. *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) ("[R]ehabilitation alone cannot constitute an extraordinary and compelling reason for release.").

A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The Court previously considered and took into account Babb's lack of disciplinary history, as well as his efforts to improve himself and those around him through educational and vocational programs and volunteer work. ECF 275 at 36. In connection with the Motion, Babb has submitted additional material, including letters, certificates, and transcripts, in support of his claim of rehabilitation. *See* ECF 310-1–ECF 310-4; ECF 326-1–ECF 326-5; ECF 327-1.

The government acknowledges that Babb's "attempts at rehabilitation are laudable," but it contends "they are not so extraordinary that they merit release." ECF 318 at 13. The government also argues that defendant's completion of "additional activities" does not merit another round of relief because "compassionate release filings would never end. Defendants would simply seek relief seriatum [sic] each and every time they complete a new BOP course." *Id*. at 14.

The government also points to a recent disciplinary infraction, claiming Babb was "recently charged with assaulting a fellow inmate by throwing hot coffee on him." *Id*.  In particular, the disciplinary record submitted by the government states that defendant was involved in an argument with inmate Mitchell.  ECF 318-2.  The document is titled, "Assaulting w/o serious injury." *Id*.  It states:  "Babb threw cup of coffee at Mitchell." *Id*.

Babb submitted a letter from the Acting Chief Psychologist at USP Lewisburg, where Babb was formerly incarcerated.  He states that Babb "has been an asset" to the Psychology Services Department at USP Lewisburg.  ECF 310-1 at 2.  He adds, *id.*:  "He has worked to overcome difficulties associated with a lengthy prison sentence, specifically promoting pro-social activities through the creation of a coveted program, Men of Influence. . . . He has assisted in altering the inmate culture of USP Lewisburg, guiding change through modeling.  This proved challenging as prison culture is often ingrained within an institution.  He was capable of assisting in the creation of a safe environment which promotes individual and group (community) change."  Further, the letter states that, through defendant's mentorship position, he "took on [a] role which proved effective in both altering the destructive paths of the participants and creating staff acceptance of the new program" and "provid[ed] support, understanding, and guidance to a population who was fearful to leave their cells." *Id*.

The letter also addresses the infraction cited by the government.  It states, *id.* at 1–2:

> When working with incarcerated adults with mental health difficulties, there are possible acts which impact the mentor population.  Mr. Babb was the victim of an incident in which a participant responded in a violent manner.  This incident resulted in receiving an incident report for assault.  This charge was a result of [Babb's] cup of cold coffee landing on an individual who attempted to engage in assaultive behavior toward him.  As the incident was not a result of violence, criminal thinking, or assaultive behavior, Mr. Babb remains a mentor on the unit, receiving mental health certification training.

Included also in Babb's supplement is a letter from the special education teacher at USP Lewisburg regarding Babb's work ethic as a tutor for the special learning needs class.  *See* ECF 310-1 at 4.  The letter states:  "Babb's monthly work performance rating has been outstanding since the beginning of his education tutor employment assignment."  *Id.*

Babb also provided letters from fellow inmates writing on his behalf.  These letters reflect that Babb "is a role model to inmates that have come to [RU or reintegration unit], encouraging men to make positive choices, live in a pro[-]social way, continue in there [sic] education," *id.* at 6, has taught inmates "a lot about living an honest life, being honest about [their] past so that [they] can make wiser, pro-social and healthy lifestyle choices today and in the future," *id.* at 9, and "is a man who leads by example and takes time to help others who are wanting to change their own lives.  He provides knowledge from his own experience in which he has learned from to help other men change their destructive behaviors."  *Id.* at 15.  Another states:  "No other inmate has impressed or motivated me to become a better man than Mr. Babb has."  *Id.* at 10.  Yet another states:  "His advice is paramount to my growth and development and his teachings in the inmate[-]facilitated program Men of Influence are one of a kind.  There is not a person I have faith or trust in more outside of family, than Walter.  He is honest, sincere, positive, trustworthy and most of all[,] reliable."  *Id.* at 17.

I reiterate that defendant's rehabilitative efforts are laudable.  Indeed, he has been rewarded with a substantial reduction to his sentence, from life imprisonment plus five years, to a total sentence of thirty years of imprisonment.  Defendant has served just over twenty years of imprisonment, which equates to two-thirds of his reduced sentence.  As I see it, the period of incarceration that Babb has served to date is not sufficient to warrant his immediate release.

In particular, this was an extremely serious case, involving the trafficking of a huge quantity of dangerous drugs.  The drug conspiracy, of which defendant was a part, resulted in two deaths.  Moreover, defendant's prior record is a serious one.  With one exception, the criminal justice system had been lenient with defendant.  A substantial sentence is warranted, not only as punishment and to protect the public, but also to promote respect for the law.

### IV.    Conclusion

For the foregoing reasons, I shall deny defendant's Motion.

An Order follows, consistent with this Memorandum Opinion.


Date: October 24, 2024                                       _____/s/_____

                                                             Ellen Lipton Hollander
                                                             United States District Judge